**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Redman, | No. CV-22-00431-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

On December 8, 2017, Claimant Robert Redman filed an application for Supplemental Security Income benefits, alleging disability beginning November 18, 2016. (AR. 30.) The agency denied his claim initially on April 9, 2018 and again on reconsideration on October 24, 2018. (AR. 30.) After an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on May 22, 2020, finding Claimant not disabled. (AR. 39.) The Appeals Council denied review of the decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (AR. 1.) Claimant seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

**I.     Standard**

An ALJ's factual findings are "conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quotation and citation omitted). Substantial evidence is "more than a mere scintilla" and "means—and means only—such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quotations and citations omitted). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). The substantial evidence standard is a "highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). In its review of an ALJ's decision, the Court reviews only those issued raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled, the ALJ engages in a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically determined to be disabled. If not, the ALJ moves to the fourth step, where he assesses the claimant's residual functioning capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is not so capable, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**II.     Analysis**[1]

On review, Claimant raises the following three issues: (1) whether the ALJ's

---
[1] Though the issues have been fully briefed, the Court notes that whether the ALJ properly classified Claimant's past relevant work is not identified in the "Issues Presented" sections of his briefs. (Docs. 11 at 1, 13 at 1.)

determination that the medical opinions are unpersuasive is adequately explained and supported by substantial evidence in the record; (2) whether the ALJ erred in determining that Claimant could perform his past relevant work; and, if the ALJ did err, (3) whether the Court should reverse and remand for an immediate award of benefits or for a new hearing. (Doc. 11.) The Court addresses each issue in turn.

### A. Medical Opinion Evidence

For claims filed on or after March 27, 2017, ALJs give no specific evidentiary weight, including controlling weight, to any medical opinion. 20 C.F.R. § 416.920c(a). Instead, the regulations require that the ALJ consider all medical opinions and articulate how persuasive he finds them. *Id.* at § 416.920c(b). The revised regulations provide that treating physician's assistants are considered medical sources. *Id.* § 416.902(a)(8).

The ALJ considers several factors in assessing the persuasiveness of a medical opinion, but he need only articulate in his decision his findings regarding the supportability and consistency of the opinion with other evidence in the record. *Id.* § 416.920c(b)(2). Supportability refers to the supporting explanations and objective medical evidence offered by the source to justify her medical opinion. *Id.* § 413.920c(c)(1). Consistency refers to the uniformity and agreement amongst the evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(2).

The ALJ properly explained why he did not find the medical opinions of Paul Bendheim, M.D., Ernest Griffith, M.D., and Nadine Keer, D.O. entirely persuasive. Dr. Bendheim noted that Claimant's standing and walking limitations are attributable to his lumbar spine issues, and primarily on his gout. (AR. 396-397.) Dr. Griffith, in support of his assessment, which included that Claimant should avoid concentrated exposure to hazards, cited to evidence documenting gouty arthritis that affects Claimant's feet and ankles and tenderness of the lumbar spine, which Dr. Keer agreed with. (AR. 80, 93.) The ALJ explained that, although these doctors' opinions were reasonable and well-supported based on the evidence available to them, their opinions were somewhat undermined by additional evidence received at the hearing level, including Claimant's own testimony.

(AR. 38.) For example, Claimant testified that he only has gout flareups every few months and he reported to doctors that he has not had a flare up in years. (AR. 59, 540, 543, 548.) It was reasonable for the ALJ to conclude based on this testimony that Claimant's ability to stand and walk is less limited than the doctors opined. Furthermore, Claimant testified that he takes daily medication for his back pain, from which he has no side effects, and that he drives daily. (AR. 57-58.) The ALJ reasonably concluded that Claimant is not as limited as the doctors opined because his symptoms are adequately controlled by pain medication with minimal to no side effects. The Court therefore finds that the ALJ's determination that the medical opinions are not entirely persuasive is adequately explained and supported by substantial evidence in the record.

## B. Claimant's Past Relevant Work

Claimant contends that the ALJ did not accurately classify his past work. (Doc. 11 at 8.) Past relevant work is that which is "done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). An ALJ is responsible for determining whether a claimant remains capable of performing his past relevant work in light of his RFC. 20 C.F.R. § 404.1560(b). The ALJ determined that Claimant can perform his past relevant work as a warehouse supervisor as that job is generally performed and as a backhoe operator as Claimant actually performed that job. (AR. 38.) Claimant argues that, even if the ALJ correctly formulated his RFC, the record is too ambiguous to support the ALJ's characterization of his past relevant work. (Doc. 11 at 8.) The Court agrees.

### i. Warehouse Supervisor

Claimant contends that the ALJ failed to develop the record regarding his past warehouse job, leading the ALJ to erroneously classify it as "warehouse supervisor." He argues that, although he had the title of warehouse manager, the way he described his job during the administrative hearing conflicts with the description of the job in the Dictionary of Occupational Titles ("DOT"). (Doc. 11 at 8.) The DOT describes the job of "warehouse supervisor" as follows:

> Supervises and coordinates activities of workers engaged in receiving, transporting, stacking, order filling, shipping, and maintaining stock records in warehouse. Supervises labeling and casing or packing of materials or products. Trains new workers. May be known by specific area worked as Cooler Supervisor (dairy products). Performs duties as described under SUPERVISOR (any industry) Master Title.
>
> GOE: 05.09.01 STRENGTH: L GED: R4 M3 L3 SVP: 7 DLU: 81

DOT 929.137-022. During the administrative hearing, Claimant explained his responsibilities as warehouse manager included loading and unloading trucks, packing ceramic tile and wood floor orders, and receiving and shipping orders. (AR. 53.) He also explained that he lifted and carried 70 to 100 pounds in that job, and that he did not have to hire or fire any employees. (AR. 53.) However, in his work history report, Claimant wrote that the heaviest weight he lifted as a warehouse manager was 65-70 pounds, he supervised 3 people, he hired and fired employees after talking with his superiors, and he was a lead worker. (AR. 223.) The ALJ had a duty to develop the record and clarify the inconsistencies between the DOT job description, the hearing testimony, and the work history reports to determine the nature of the job Claimant was performing as warehouse manager. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The record also is ambiguous as to how long Claimant worked as a warehouse manager and whether he performed the job long enough to reach a specific vocational preparation ("SVP") level of 7, as described by the DOT. Claimant testified that he stopped working as a warehouse manager in 2005, was rehired in 2016, but shortly thereafter became unable to perform the job due to his impairments. (AR. 53.) However, his work history report says otherwise. The work history report indicates that Claimant worked as a warehouse manager at a flooring store from January 1989-January 2011, as a warehouse manager at a wholesale flooring business from January 2002-January 2006, and then as a warehouse manager at a wholesale flooring business from September 2016-November 2016. (AR. 222.) The ALJ failed to develop the record to address the ambiguity of whether Claimant worked as a warehouse manager long enough to reach the requisite SVP level.

### ii. Backhoe Operator

The ALJ also identified "backhoe operator" as one of Claimant's past relevant jobs. (AR. 39.) The DOT describes the job as follows:

> Operates power-driven machine, equipped with movable shovel, to excavate or move coal, dirt, rock, sand, and other materials: Receives written or oral instructions from supervisor regarding material to move or excavate. Pushes levers and depresses pedals to move machine, to lower and push shovel into stockpiled material, to lower and dig shovel into surface of ground, and to lift, swing, and dump contents of shovel into truck, car, or onto conveyor, hopper, or stockpile. Observes markings on ground, hand signals, or grade stakes to remove material, when operating machine at excavation site. May tend mining machinery, such as pulverizer. May be designated according to type of power unit as Diesel-Power-Shovel Operator (any industry); Electric-Power-Shovel Operator (any industry); Gasoline-Power-Shovel Operator (any industry). May operate power shovel equipped with duck-bill scoop and be designated Duck-Bill Operator (mine & quarry). May operate power shovel which digs by pulling dipper toward machine and be designated Back-Hoe Operator (any industry). May operate power shovel on which excavating bucket runs outward along horizontal boom to dig into materials and be designated Skimmer-Scoop Operator (any industry). May operate power shovel designed to be converted to crane, skimmer scoop, backhoe, or dragline and be designated Convertible-Power-Shovel Operator (any industry).
>
> GOE: 05.11.01 STRENGTH: M GED: R3 M1 L1 SVP: 5 DLU: 80

DOT 850.683-030. The ALJ, however, found that Claimant actually performed the job differently than the way the DOT describes it, and that Claimant remains capable of performing the job as he actually performed it.

The record is too ambiguous to support the ALJ's finding. For example, "backhoe operator" is not mentioned in Claimant's work history report. (AR. 222.) In his hearing testimony, Claimant spoke about his past work as a labor operator in 2006 at a company called Knochel Brothers, where he ran a backhoe and shoveled dirt. (AR. 54.) He explained that his job duties included lifting and carrying less than 20 pounds, and that most of it was "whatever a shovel of dirt weighs and a lot of it was operator equipment, backhoe." (AR. 54.) From this testimony, the ALJ inferred that the job Claimant actually performed was light work. Light work involves frequent lifting up to 10 pounds, and no more than 20

pounds. 20 C.F.R. § 404.1567(b). The ALJ failed to develop the record to determine whether Claimant lifted more than 10 pounds frequently, which would include inquiring how much a shovel of dirt weighs. Furthermore, the DOT describes the backhoe operator job as requiring workers to push levers and depress pedals at a medium exertional level. The ALJ did not ask Claimant about the frequency and weight of the pedals and levers he worked with and consequently failed to develop the record with regards to the exertional level at which Claimant previously performed his job as a labor operator.

From the Courts perspective, the record regarding Claimant's past relevant work is far too ambiguous to support the ALJ's decision. The ALJ had a duty to develop the record to better resolve these ambiguities by, for example, asking Claimant about the discrepancies between his hearing testimony and his work history report. This error is not harmless because someone of Claimant's age and RFC would be considered disabled under agency regulations if that person could not perform past relevant work. 20 C.F.R. Part 404, Subpt. P, App. 2., § 202.02.

**C. Remedy**

Having concluded that the ALJ failed to develop the record regarding Claimant's past relevant work, the Court must determine the appropriate remedy. Claimant notes in his opening brief that, should the Court remand, his past work as a backhoe operator will be too far removed to qualify as past relevant work under agency regulations. (Doc. 11 at 9.) He does not make the same argument for the warehouse manager job, however. It therefore remains possible that, on remand after further record development, the ALJ could find Claimant capable of performing past relevant work. Given the ambiguities in the record, the Court finds a remand for further administrative proceeds would serve a useful purpose. See *Leon v. Barryhill*, 874 F.3d 1130, 1133 (9th Cir. 2017) (noting that a court need not apply the credit-as-true rule where the record is "uncertain and ambiguous"). Accordingly,

/ / /

/ / /

**IT IS ORDERED** that the final agency decision is **REVERSED** and this matter **REMANDED** for further proceedings consistent with decision. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 29th day of June, 2023.

Douglas L. Rayes
United States District Judge